1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

12

13

14

15

JAMES ENCINAS,

                          Plaintiff(s),

        v.

UNIVERSITY OF WASHINGTON,

                          Defendant(s).

CASE NO. 2:20-cv-01679-TL

ORDER ON MOTIONS TO DISMISS,
FOR SUMMARY JUDGMENT &
FOR RECONSIDERATION

16

17

18

19

20

21

22

23

24

        This matter is before the Court on Defendant University of Washington's motion to

dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(5) and 12(b)(6) (the "Motion to

Dismiss") (Dkt. No. 17), *pro se* Plaintiff James Encinas's motion for summary judgment (the

"Motion for Summary Judgment") (Dkt. No. 19), and Mr. Encinas's motion for reconsideration

of the denial of his prior motion for appointment of counsel (the "Motion for Reconsideration")

(Dkt. No. 23). Having considered the relevant record, the Court: (1) GRANTS in part and DENIES

in part the Motion to Dismiss; (2) STRIKES the Motion for Summary Judgment; (3) STAYS the

Motion for Reconsideration; and (4) STAYS this matter until the Motion for Reconsideration is

resolved, for the reasons below.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## I.    BACKGROUND

Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. §§ 2000e–2000e-17, for employment discrimination by Defendant, his former employer, on the basis of race. *See* Dkt. No. 5, at 3–4 (Complaint). The Complaint consists of seven pages of a form for filing a complaint for employment discrimination and over 400 pages of exhibits, many of which contain handwritten notations from Plaintiff. *See* Dkt. No. 5-1. Plaintiff seeks relief in the form of: (1) compensatory damages, in the amount of $50,066 for loss of wages and an unspecified amount for pain and suffering; and (2) punitive damages, in the amount of $5 million. Dkt. No. 5 at 6.

### A.    Summary of Allegations

Construing the Complaint liberally, Plaintiff alleges as follows, unless otherwise noted:

From around April 27, 2017, to December 5, 2019, Plaintiff was employed by Harborview Medical Center ("Harborview") as a Peer Support Specialist in the Housing and Recovery through Peer Support Program ("HARPS") at Harborview. Dkt. No. 5 at 3, 5; Dkt. No. 5-1 at 8–9; Dkt. No. 5-3 at 74. Plaintiff claims that, during this time, he experienced unequal terms and conditions of his employment, retaliation, failure to be promoted, and wrongful termination due to discrimination on the basis of his race or color. Dkt. No. 5, at 4–5.

Plaintiff's grievances and related incidents are many. *See, e.g.*, Dkt. No. 5-1 at 4–5 (summary of allegations); Dkt. No. 5-3 at 73–74 (circumstances of Plaintiff's termination). These include:

- In August 2017, Lisa Lovejoy, a Program Coordinator at HARPS, and Clara Evans, another Peer Support Specialist, tried to harm Plaintiff by "forcing" him to

transport a violent Level 3 sex offender. Dkt. No. 5-1 at 10. Defendant denies that Plaintiff was coerced into transporting the individual in any way.[1] *Id.*

- On or about May 22, 2018, Ms. Lovejoy struck up a conversation with Plaintiff that Plaintiff did not want to engage in, and the two ended up in a heated conversation, during which Ms. Lovejoy blocked Plaintiff from walking away, moved closer to him (making him step back against the wall and raise his hands in submission), and told Plaintiff to "shut your mouth." Dkt. No. 5-1 at 14–15. On May 25, Plaintiff lodged a complaint regarding this incident, among other allegations related to Ms. Lovejoy. *Id.*at 14–16. Defendant conducted an investigation, as a result of which Ms. Lovejoy received formal counseling for unprofessional behavior. *Id.*at 8, 10; Dkt. No. 5-4 at 5.

- In October 2018, Plaintiff reported an incident in which Ms. Lovejoy verbally and physically assaulted Ms. Evans at the workplace, stating that he felt "really overwhelmed, unsupported and unsafe." Dkt. No. 5-1 at 9, 11, 25. Defendant investigated the allegations and found that Ms. Lovejoy had acted unprofessionally. *Id.*at 9, 11, 28; Dkt. No. 5-4 at 5.

- On May 21, 2019, Nola Balch, Senior Human Resources Consultant for Defendant, met with Plaintiff to discuss her findings after completing an investigation into Plaintiff's complaints of workplace misconduct. Dkt. No. 5-1 at 12–13, 30.[2] Ms. Balch found that a number of Plaintiff's concerns were valid, and in particular that Harborview's leadership "does not consistently and effectively follow up on employee complaints/concerns," including complaints about Ms. Lovejoy's conduct toward Ms. Evans in October 2018. *Id.* at 30. She also ultimately found that the October 2018 incident was investigated and addressed. *Id.* Ms. Balch noted that she was working with Harborview leadership to address her findings and suggested solutions. *Id.* Plaintiff believes Ms. Balch's response to his complaints was inadequate. *Id.*

- On June 26, 2019, Plaintiff escorted Damaris Ruiz, a co-worker, to the parking garage to wait for her husband and was approached by female employee who asked Ms. Ruiz if she was OK. *Id.*at 12. When Ms. Ruiz asked the employee whether she had asked that question because Plaintiff was Black, the employee replied, "Yes, because of all the things that have been happening in the building, and you looked a little scared." *Id.* This incident was reported and investigated, but Defendant could not identify the female employee. *Id.*

---

[1] Defendant has yet to directly respond to Plaintiff's allegations. The references to Defendant's positions are taken from its response to the EEOC complaint. *See* Dkt. No. 5-1 at 8–13.

[2] The letter from Ms. Balch is dated as June 2018, but from the contents of the letter, it is clear that it was intended to be dated as June 2019. Dkt. No. 5-1 at 30.

Plaintiff himself also became the subject of an investigation related to two interactions with co-workers on April 24 and April 26, 2019. *Id.* at 9. This resulted in a finding that Plaintiff had acted unprofessionally toward his co-workers and a Formal Counseling Action Plan. *Id.* On August 8, 2019, Plaintiff was placed on non-disciplinary paid administrative leave pending Defendant's investigation into a new complaint lodged against Plaintiff by a co-worker. *Id.* at 9, 32. It is unclear when and how Plaintiff returned from administrative leave, but he was placed on paid administrative leave again on November 13, 2019, following a co-worker's complaint that Plaintiff had posted a photograph of his co-workers on his Facebook that was taken as a threat of violence. Dkt. No. 5-3 at 74. Plaintiff followed up again on or around November 14 with a Facebook post that was again taken as a threat to harm or kill his co-workers. *Id.* Plaintiff was terminated from his employment on December 5, 2019. *Id.*

**B.    Procedural History**

On or about June 27, 2019, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") for discriminatory conduct on the basis of race and color, including retaliatory conduct, based on incidents that occurred between August 2017 and June 2019. Dkt. No. 5-1 at 4–5. On August 17, 2020, Plaintiff received a Notice of Right to Sue letter from the EEOC, stating that the EEOC was "unable to conclude that the information obtained [during the EEOC's investigation] establishes violations of the statutes." Dkt. No. 5-5 at 62.

Plaintiff filed this case on November 13, 2020 (Dkt. No. 1)[3] as a *pro se* plaintiff (without legal representation) and was granted leave to proceed *in forma pauperis* (without the need to

---

[3] Plaintiff's lawsuit commenced on the date of his *in forma pauperis* motion, which had Plaintiff's complaint attached, for the purposes of the 90-day limitations period for filing a Title VII complaint after the EEOC's right-to-sue letter. *See Escobedo v. Applebees*, 787 F.3d 1226, 1232–33 (9th Cir. 2015) (where a complaint was filed as a part of the *in forma pauperis* motion, "the simple fact is that [plaintiff] filed her complaint in this case well prior to the deadline").

pay the filing fee) (Dkt. No. 4). Plaintiff filed an application for court-appointed counsel (the "Motion for Appointed Counsel"), which erroneously stated that the action was not an employment discrimination action brought under Title VII and that Plaintiff had not been granted leave to proceed *in forma pauperis*. Dkt. No. 6, at 1. Defendant did not respond. The Motion for Appointed Counsel was denied, on the basis that Plaintiff had failed to show "exceptional circumstances" that warranted the appointment of counsel under 28 U.S.C. § 1915(e)(1), which governs the appointment of counsel for *in forma pauperis* actions generally. Dkt. No. 9.

On February 10, 2021, Plaintiff filed a proof of service, which showed that a process server had attempted to serve Defendant by leaving the summons with a woman, purported to be an employee of the University of Washington, on February 9, 2021. Dkt. No. 11 at 2. Defendant subsequently filed the Motion to Dismiss, seeking to dismiss the case for insufficient service of process under FRCP 12(b)(5) and to dismiss Plaintiff's claim for punitive damages under FRCP 12(b)(6). Dkt. No. 17 at 1. In response, Plaintiff filed a combined response to the Motion to Dismiss and Motion for Summary Judgment. Dkt. No. 19. Defendant replied in support of its Motion to Dismiss (Dkt. No. 20) and responded to the Motion for Summary Judgment (Dkt. No. 21). Plaintiff responded to neither brief.

This case was later reassigned to the Honorable Tana Lin, who now presides over this case. Dkt. *See* Dec. 13, 2021 Docket Entry. On December 22, 2021, Plaintiff filed a Motion for Reconsideration, seeking a reconsideration of the prior court order denying the Motion for Appointed Counsel. Dkt. No. 23. Under Local Civil Rule ("LCR") 7(h)(2), the Court permitted Defendant to respond to the Motion for Reconsideration by August 22, 2022. Dkt. No. 27. Defendant responded, arguing that the Court should deny the Motion for Reconsideration. Dkt. No. 28. Plaintiff did not reply.

Separately, on February 24, 2022, Plaintiff filed another proof of service, this time showing that the summons for this action was served on Defendant by email to the state Attorney General's office on February 16, 2022. Dkt. No. 26 at 1–2.

## II.   DISCUSSION

There are three pending motions in this case. The Court first tackles Defendant's Motion to Dismiss, also addressing other grounds for dismissal the Parties have asserted in later briefs, and then addresses Plaintiff's Motion for Summary Judgment. Finally, the Court addresses Plaintiff's Motion for Reconsideration.

### A.    Motion to Dismiss

Defendant moves to dismiss under FRCP 12(b)(5), for insufficient service of process, and FRCP 12(b)(6), for failure to state a claim upon which relief can be granted.

#### 1.        FRCP 12(b)(5): Insufficient Service of Process

##### a.        *Method of Service*

Defendant seeks dismissal of Plaintiff's Complaint on the basis that Plaintiff's service of process was insufficient because he failed to serve process in accordance with Washington state law requirements for serving a State agency such as Defendant. Dkt. No. 17 at 2–3. Plaintiff responds that Defendant has actual notice of the action, including the complaint, and that Defendant has "verif[ied] that Plaintiff properly served Defendant[] . . . at [Defendant's] place of business." Dkt. No. 19 at 5. Plaintiff also re-attempted service of process on Defendant by serving the Office of the Attorney General of the State of Washington with the Complaint and Summons. Dkt. No. 26.

The Parties do not dispute that Defendant—the University of Washington—it is a state agency. *See* Dkt. No. 17 at 3 ("a State agency such as the University of Washington/Harborview Medical Center"). The courts of this Circuit have also recognized this. *See, e.g.*, *Heagney v.*

*Univ. of Wash.*, 642 F.2d 1157, 1158 (9th Cir. 1981) ("Congress made the provisions of Title VII applicable to state and local governmental entities such as the University of Washington . . . ."), *overruled on other grounds by Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477 (9th Cir. 1987); *Marquez v. Harborview Med. Ctr.*, No. C16-1450, 2018 WL 741321, at *9 (W.D. Wash. Feb. 7, 2018) (dismissing a Section 1983 claim because Harborview Medical Center is a state agency and not a "person" whose actions can be the basis of a Section 1983 claim), *aff'd*, 770 F. App'x 789 (9th Cir. 2019).

FRCP 4(j)(2) governs the requirements for service of process on a state agency:

> A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:
>
> (A)    delivering a copy of the summons and of the complaint to its chief executive officer; or
>
> (B)    serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

In turn, Washington statute provides: "Service of summons and complaint in such actions [against governmental entities] shall be served in the manner prescribed by law upon the attorney general, or by leaving the summons and complaint in the office of the attorney general with an assistant attorney general." RCW 4.92.020.

"Cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (affirming district court's denial of default judgment); *see also Wilcox v. Portfolio Recovery Assocs., LLC*, No. 2:20-cv-01545-JAD-NJK, 2020 WL 6729278, *2 (D. Nev. Nov. 16, 2020) (dismissal based on insufficient service not warranted "[g]iven the public policy favoring disposition of cases on their merits"). Accordingly, FRCP 4 is "a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint" and there was "substantial compliance" with the rule. *See Direct Mail*

*Specialists, Inc. v. Eclat Computerized Techs., Inc.,* 840 F.2d 685, 688 (9th Cir. 1988) (service on small corporation's receptionist was sufficient notice). And, *pro se* litigants who have been granted *in forma pauperis* status may request the U.S. Marshals Service to serve the summons and complaint. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3); *Sharkey v. O'Neal*, 778 F.3d 767, 769 n.2 (9th Cir. 2015) ("[T]he district court is responsible for effectuating service of process where the plaintiff is proceeding *in forma pauperis* . . . ."). The Court is therefore mindful that Plaintiff should not be unfairly penalized for any failure to abide by FRCP 4. On the other hand, Plaintiff's *pro se* status and Defendant's actual notice do not excuse Plaintiff from his obligation to serve Defendant with process. *See, e.g.*, *Graham v. United States*, 79 F. App'x 992, 993–94 (9th Cir. 2003) (plaintiff's *pro se* status and his mailing of a copy of the pleadings a local IRS office without a summons were insufficient service of process on the United States).

Here, Plaintiff (apparently not realizing he could have made a request for the U.S. Marshals to serve the Complaint) attempted service by serving the summons on an employee of Defendant, and then again, following Defendant's Motion to Dismiss (and about a year after the first attempted service), by serving the Summons and the Complaint on the Attorney General's office. Dkt. Nos. 11, 26. The Attorney General permits service on a state agency by the email address that Plaintiff used to serve Defendant on February 16, 2022. *See* Wash. State Off. of the Att'y Gen., Electronic Service of Original Summons & Complaint, https://www.atg.wa.gov/electronic-service-original-summons-complaint (last visited Sept. 20, 2022).

Plaintiff's initial attempt at service was insufficient, as it did not comply with the requirements of serving process on a state agency such as Defendant. *See* Fed. R. Civ. P. 4(j)(2). The second attempt at service appears to have been sufficient at least in its *method*, as Plaintiff served process in accordance with the manner prescribed by the Attorney General of the State of

Washington. *See United States v. Herring*, No. 2:22-CV-00036, 2022 WL 4487960, at *2 (E.D.

Wash. Sept. 27, 2022) (recognizing service where State of Washington was served in accordance

with Attorney General's electronic service procedures).

### b.      Timing of Service

This second attempt, however, occurred well beyond the 90-day deadline for service of

process. *See* Fed. R. Civ. P. 4(m). When a litigant fails to serve process before the deadline, the

court must either dismiss the action without prejudice or extend the time for service. *See id.*

"District courts have broad discretion to extend time for service under [FRCP] 4(m)." *Efaw v.*

*Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007). In deciding whether to grant an extension, a court

may consider such factors as a statute of limitations, prejudice to the defendant, actual notice,

and eventual service. *Id.* A court may extend the time to serve process even after the deadline has

expired and without a showing of good cause. *See Mann v. Am. Airlines*, 324 F.3d 1088, 1090 &

n.2 (9th Cir. 2003). Also, the Federal Rules of Civil Procedure "should be construed,

administered, and employed by the court and the parties to secure the just, speedy, and

inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Here, many factors warrant granting an extension of the time to serve process on

Defendant and recognizing that service of process has been completed. Plaintiff, proceeding *pro*

*se* and *in forma pauperis*, attempted to serve Defendant (by insufficient means) within the

required 90 days, as the case was filed on November 13, 2020, and Plaintiff's first attempted

service occurred on February 9, 2021. Defendant clearly had timely notice of this action because

it appeared on the docket just nine days later. Dkt. Nos. 12, 13. Also, while Defendant's

objections to Plaintiff's attempted service remained pending before the Court, Plaintiff

proactively and voluntarily worked to cure the defect in his first attempt at service—even

though, as noted above, the responsibility for effecting service could have rested with this Court

had Plaintiff realized he could make that request. Defendant also has not shown that it suffered

or will suffer any prejudice as a result of Plaintiff's failure to abide by all technical requirements

of FRCP 4. Indeed, Defendant began actively litigating this case just 16 days after Plaintiff's first

attempted service, including filing a motion for relief from initial scheduling deadlines and

shortly after a motion to dismiss. Dkt. Nos. 16, 17. Finally, Plaintiff would be severely

prejudiced if his Complaint were dismissed and he was no longer permitted to pursue his claims

of discrimination due to a defect in service, which is likely to be the case given that the 90-day

deadline under the EEOC letter has expired.

In short, Plaintiff has already corrected his error and effected service of process properly,

and dismissal of this action for insufficient service is inappropriate under the facts of this case.

As Defendants recognize, dismissal is unsuitable where there is a reasonable prospect that

service may yet be obtained, as it was in this case. Dkt. No. 17 at 4 (quoting *Arasan Chip Sys.,*

*Inc. v Sonix Tech. Co. Ltd.*, No. 5:09–CV–02172, 2010 WL 890424, at *1 (N.D. Cal. Mar. 8,

2010)). Further, to ask Plaintiff to re-serve Defendant in accordance with the Attorney General's

preferred method of service on state agencies would not cure Plaintiff's delay in serving process

properly but would instead only waste resources and cause further delay. Accordingly, the Court

finds it appropriate to retroactively extend Plaintiff's time to serve Defendant to the date of this

Order and finds that service was completed in "substantial compliance" with FRCP 4. *See, e.g.,*

*Uniloc 2017 LLC v. Box, Inc.*, No. 18-cv-07038, 2019 WL 1571880, at *2 (N.D. Cal. Apr. 11,

2019) (granting retroactive extension of service deadline).

### c.      *Completeness of Service*

The Court also rejects Defendant's objection that "the complaint [served] was

incomplete." *See* Dkt. No. 17 at 5. Defendant fails to state how the Complaint was "incomplete."

*Id.* In any case, Defendant has full access to the full Complaint, with its exhibits, on the docket.

1    *See* Dkt. Nos. 5 to 5–6. Defendant also appears to be in possession of many of the exhibits

2    attached to the complaint. Defendant accordingly has not suffered prejudice from the omission.

3    "Because the purpose of [FRCP] 4 is to ensure that defendants have adequate notice of all

4    claims, common sense would suggest that possessing a full copy of the Complaint satisfies this

5    requirement, regardless of the source from which the defendants obtained any attached exhibits."

6    *Sweeney v. Darricarrere*, No 2:09–cv–00266, 2009 WL 2132696, at *5 (D. Ariz. July 14, 2009)

7    (rejecting FRCP 12(b)(5) argument where service of process omitted exhibits to the complaint);

8    *see also Smallwood v. Allied Pickfords, LLC*, No. 08cv2196, 2009 WL 3247180, at *12 (S.D.

9    Cal. Sept. 29, 2009) ("Plaintiff's failure to attach referenced exhibits to the complaint was

10   harmless . . . ."), *reconsidered on other grounds*, 2010 WL 11508273 (S.D. Cal. Feb. 5, 2010),

11   *aff'd*, 660 F.3d 1115 (9th Cir. 2011).

12        Defendant's reliance on *West Coast Theater Corp. v. City of Portland* is unpersuasive.

13   897 F.2d 1519 (9th Cir. 1990). That case involved an "incomplete *draft* complaint" and hinged

14   on a materially different, prior version of FRCP 4 that required a finding of good cause to extend

15   the time to serve process. 897 F.2d at 1528–29 (emphasis added); *see also Burnell v. Lewis*

16   *Brisbois Bisgaard & Smith LLP*, No. C22-0265, 2022 WL 2668247, at *3 (W.D. Wash. July 11,

17   2022) ("Even in the absence of good cause . . . the court has broad discretion to extend the time

18   for service.").

19        Accordingly, the Court DENIES in part the Motion to Dismiss as it relates to FRCP

20   12(b)(5). Plaintiff's time to serve process is EXTENDED to the date of this Order, and the Court

21   finds that Plaintiff has already substantially complied with the service requirements of FRCP 4.

22   No further attempts to serve the Complaint and Summons on Defendant is necessary.

23

24

2.        **FRCP 12(b)(6): Failure to State a Claim**

This case arises out of discrimination based on Plaintiff's race and color under Title VII of Civil Rights Act of 1964, Pub. L. 88-352 (codified as amended in scattered sections of 42 U.S.C.). The remedies he seeks include punitive damages. Dkt. No. 5 at 6 (listing relief sought). Defendant seeks to dismiss Plaintiff's claim for punitive damages, arguing that Title VII does not permit recovery for punitive damages from a governmental agency such as Defendant. Dkt. No. 17 at 6. Plaintiff appears to argue that he asserted punitive damages on the advice of counsel he had consulted in his search for legal representation, but he does not refute Defendant's argument otherwise. Dkt. No. 19 at 8–9.

In certain Title VII actions for intentional discrimination, the complainant may recover compensatory and punitive damages. 42 U.S.C. § 1981a(a)(1). Punitive damages, however, may not be recovered from a respondent that is "a government, government agency or political subdivision." *Id.* § 1981a(b)(1); *see* EEOC, *Enforcement Guidance: Compensatory and Punitive Damages Available Under sec 102 of the CRA of 1991* (July 14, 1992), https://www.eeoc.gov/laws/guidance/enforcement-guidance-compensatory-and-punitive-damages-available-under-sec-102-cra ("Punitive damages are awarded to punish the respondent and to deter future discriminatory conduct. They are not available against a federal, state, or local government, a government agency, or a political subdivision."); *see also Barefield v. Calif. State Univ. Bakersfield*, 2006 WL 829122, at *7 (E.D. Cal. Mar. 28, 2006) (holding plaintiff cannot recover punitive damages from state university under Title VII). As stated above, the Parties do not dispute that Defendant is a governmental entity. Therefore, under 42 U.S.C. § 1981(b)(1), Plaintiff may not recover punitive damages from Defendant from a Title VII claim.

Accordingly, the Court GRANTS in part Defendant's Motion to Dismiss. Plaintiff's claim for punitive damages is dismissed.

### 3.    Failure to Meet and Confer

Plaintiff argues that Defendant failed to abide by the Standing Order for Civil Cases Assigned to Judge Richard A. Jones, which requires parties to meet and confer before filing any motion. Dkt. No. 7 at 3–4; Dkt. No. 19 at 6–7. This case is now assigned to the Honorable Tana Lin. While this Court also supports cooperation among parties, including regular meet and confers that may limit or even eliminate the need for bringing certain motions, this Court will not strike or deny Defendant's Motion to Dismiss on this basis alone. However, the Court expects the Parties to follow the federal rules, local rules, and all standing orders of the Court going forward and may impose sanctions as necessary.

### 4.    Other Bases for Dismissal

Defendant asserts a new ground for dismissal in its reply brief supporting its Motion to Dismiss, seeking dismissal of this *in forma pauperis* action for failure to state a claim under 28 U.S.C. § 1915. Dkt. No. 20 at 2 & n.1, 4–5. Defendant also wedges in new arguments for dismissal in its opposition to Plaintiff's Motion for Summary Judgment, arguing that: (1) Plaintiff's allegations fail to state a Title VII claim because he fails to show either discriminatory intent or a *prima facie* case of disparate treatment; (2) Plaintiff's state law negligent investigation claim is not a cognizable cause of action; and (3) the Court does not have subject matter jurisdiction over Plaintiff's wrongful termination claim, as Plaintiff has failed to exhaust his administrative remedies. Dkt. No. 21 at 3–6 (inserting "further support for dismissal of Plaintiff's Title VII claim in its entirety"). Defendant failed to raise these arguments in its Motion to Dismiss, and the arguments do not respond to the opposition brief to the Motion to Dismiss or the Motion for Summary Judgment, respectively. Nor does Defendant explain why it could not have made these arguments in its original Motion to Dismiss.

1    The Court does not need to—and will not—consider arguments raised for the first time

2    not in the moving papers but in the reply brief or in response to a different motion. This

3    procedural deficiency is not a mere technicality. By raising new, substantive grounds for

4    dismissal in a reply brief and an opposition brief to a different motion against a *pro se* plaintiff,

5    Defendant failed to provide Plaintiff the usual length of time and means to respond to such

6    arguments. The courts of this Circuit do not permit parties to raise new arguments in a reply

7    brief, in part because it deprives the other party of an opportunity to respond. *See, e.g.*, *Zamani v.*

8    *Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (affirming district court's refusal to consider an

9    argument raised for the first time in reply); *SunTrust Banks, Inc. v. Be Yachts, LLC*, No. C18-

10   840, 2019 WL 1787226, at *2 (W.D. Wash. Apr. 24, 2019) (striking portions of plaintiff's reply

11   brief raising arguments not discussed in plaintiff's original moving papers, given lack of

12   opportunity to respond). Here, although Plaintiff could have sought to respond to Defendant's

13   new arguments in a sur-reply brief for the Motion to Dismiss or reply brief for the Motion for

14   Summary Judgment, he did not do so—and he should not be expected to cure Defendant's

15   procedural error.

16       Accordingly, Defendant's new grounds for dismissal are STRICKEN from its reply brief for

17   the Motion to Dismiss (Dkt. No. 20 at 2 & n.1, 4–5) and from its response to the Motion for

18   Summary Judgment (Dkt. No. 21 at 3–6). As Plaintiff rightfully points out (Dkt. No. 19 at 7–8),

19   Defendant is represented by trained and educated attorneys, and the Court expects Defendant—

20   as it does of Plaintiff, who proceeds without resources or legal training—to comply with the

21   rules and procedures governing this action.

22

23

24

1    **B.    Motion for Summary Judgment**

2        As a threshold matter, Defendant argues that Plaintiff's Motion for Summary Judgment is

3    premature, as Defendant has not yet filed an answer to the Complaint. Dkt. No. 21 at 2.

4    Defendant cites no authority for this assertion.

5        A motion for summary judgment, unless ordered otherwise, may be filed at any time until

6    30 days after the close of all discovery. Fed. R. Civ. P. 56(b). But "[m]otions for summary

7    judgment are frequently considered premature and denied when discovery has not been

8    completed . . . ." *E.g.*, *Aliff v. Vervent Inc.*, No. 20-cv-697, 2022 WL 3588322, at *4 (S.D. Cal.

9    Aug. 22, 2022); *see also Sowa v. Ring & Pinion Serv. Inc.*, No. 2:21-cv-00459, 2021 WL

10   6334930, *2 (W.D. Wash. Sept. 9, 2021) ("Generally, summary judgment is inappropriate before

11   the parties have had an opportunity for discovery."), *report and recommendation adopted*, 2022

12   WL 73879 (W.D. Wash. Jan. 7, 2022). An opposing party ordinarily responds to a premature

13   summary judgment motion by moving under FRCP 56(d) and showing "by affidavit or

14   declaration that, for specified reasons, it cannot present facts essential to justify its opposition,"

15   at which point the Court may defer or deny the motion for summary judgment, allow time for

16   discovery, or take any other appropriate action. *See* Fed. R. Civ. P. 56(d). Indeed, the Ninth

17   Circuit has instructed that, when a summary judgment motion is filed "early in the litigation,

18   before a party has had any realistic opportunity to pursue discovery relating to its theory of the

19   case, district courts should grant any [FRCP 56(d)][4] motion fairly freely." *Burlington N. Santa*

20   *Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Rsrv.*, 323 F.3d 767, 773 (9th Cir. 2003).

21       Defendant does not invoke Rule 56(d) or provide any details sufficient to show "how

22   particular discovery would defeat summary judgment and why specific facts are not yet

23

24   _____

[4] Rule 56(d) was formerly Rule 56(f). *See* Fed. R. Civ. P. 56(d) advisory committee's note to 2010 amendment.

available . . . ." *See id.* Defendant merely argues that the motion is premature because Defendant has yet to answer the Complaint, but provides no authority in support of this argument. Dkt. No. 21 at 2. Nonetheless, the Court considers the FRCP 56(d) factors *sua sponte* and finds that it is premature for the Court to consider the Motion for Summary Judgment at this time. This case remains in its early stages, and a case schedule has not yet been entered due to the pending motion to dismiss. Dkt. No. 18. "Summary judgment is generally premature before the entry of a scheduling order." *See Ejonga v. Strange*, No. 2:21-cv-01004, 2021 WL 6274743, at *1 (W.D. Wash. Nov. 24, 2021), *report and recommendation adopted*, 2022 WL 37649 (W.D. Wash. Jan. 4, 2022); *see also Head v. Wilkie*, 784 F. App'x 503, 506 (9th Cir. 2019) ("In a case involving allegations of employment discrimination—a fact-intensive inquiry—the complete denial of discovery placed [defendant] at a disadvantage in responding to 'a premature motion for summary judgment.'" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986))). Therefore, neither party has had a realistic opportunity to pursue factfinding, much less carry the burden of showing (or disproving) the elements of Plaintiff's claims. Further, resolving the Motion for Summary Judgment at this stage is particularly premature given the Court's ruling on Plaintiff's Motion for Reconsideration below and the accompanying possibility of Plaintiff obtaining counsel.

Accordingly, Plaintiff's Motion for Summary Judgment is premature and is STRICKEN on that basis. Plaintiff may re-move for summary judgment at a later stage of the litigation if appropriate.

**C.    Motion for Reconsideration**

Plaintiff seeks the Court's reconsideration of the prior denial of his request for the appointment of counsel. Plaintiff asserts that, due to the COVID-19 pandemic, limited access to public services, and "extreme financial hardship" caused by the pandemic, he is not able to

1   adequately represent himself in court. Dkt. No. 23. He also argues that Defendant is not acting in

2   good faith, alleging that Defendant took actions in November 2021 to investigate the allegations

3   and reach a resolution with a witness, Ms. Kristi Dore, in a "bla[]tant attempt to influence,

4   threaten[] and discourage a witness," and that Defendant has not reached out to Plaintiff despite

5   his attempts at contact. *Id.* Plaintiff argues that he is at "an extreme, unfair disa[d]vantage" in the

6   lawsuit. *Id.* Notably, Plaintiff made similar arguments in his earlier combined Motion to

7   Summary Judgment and response to the Motion to Dismiss. *See* Dkt. No. 19 at 3–5 (arguing

8   COVID-19 and imbalance in legal training among the parties constitute "exceptional

9   circumstances" warranting appointment of counsel). Defendant argues that Plaintiff's Motion for

10  Reconsideration should be denied because: (1) the Court's denial of appointment of counsel was

11  correct and the circumstances have not changed; and (2) the Motion for Reconsideration is not

12  timely. Dkt. No. 28 at 2.

13      Motions for reconsideration are disfavored in this District, and "[t]he court will ordinarily

14  deny such motions in the absence of a showing of manifest error in the prior ruling or a showing

15  of new facts or legal authority which could not have been brought to its attention earlier with

16  reasonable diligence." LCR 7(h)(1). A motion for reconsideration must be filed within 14 days of

17  the related order. LCR 7(h)(2). Failure to comply may constitute grounds for denial of the

18  motion. *Id.* "Whether or not to grant reconsideration is committed to the sound discretion of the

19  court." *Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation*, 331 F.3d

20  1041, 1046 (9th Cir. 2003).

21      As an initial matter, Plaintiff's Motion for Reconsideration fails to satisfy the procedural

22  requirements of this District. The Motion for Reconsideration was filed on December 22, 2021,

23  over a year after the December 7, 2020, order denying the appointment of counsel. Although

24  Plaintiff asserted the same arguments much earlier, in his brief filed on March 29, 2021, (Dkt.

1    No. 19 at 3–5), this was still well over the 14-day deadline to file a motion for reconsideration.

2    *See* LCR 7(h)(2).

3         Even so, the Court declines in this unique instance to deny the Motion for

4    Reconsideration based only on its delay. The Court is mindful of Plaintiff's status as a *pro se*

5    litigant, to whom a 14-day deadline in the local rules may have been difficult to discover and

6    burdensome to meet, and of Plaintiff's diligent efforts to raise his arguments at his next

7    substantive opportunity—his response to Defendant's Motion to Dismiss. The Court also finds it

8    would be against the interests of justice to deny a *pro se* party's attempts to obtain counsel to

9    assist him in a complex legal case because the *pro se* party could not handle it on his own. In any

10    case, under the liberal standards of reviewing a *pro se* filing, the Motion for Reconsideration

11    could also be considered a renewed motion for the appointment of counsel based on a change in

12    circumstances, given that Plaintiff alleges new facts from November 2021 in support of his

13    motion. *See* Dkt. No. 23.

14         Also significant is that, upon a closer look, the Court finds that there was an inadvertent

15    "manifest error" in the prior order denying Plaintiff's Motion for Appointed Counsel. *See* LCR

16    7(h)(1). Plaintiff's case was originally misclassified as a non-Title VII discrimination case. Dkt.

17    No. 6 at 1. The prior order therefore evaluated Plaintiff's request for the appointment of counsel

18    under 28 U.S.C. § 1915(e)(1), which governs the appointment of counsel in *in forma pauperis*

19    cases generally and permits a court to "request an attorney to represent any person unable to

20    afford counsel," but only in "exceptional circumstances." *See Agyeman v. Corrs. Corp. of Am.*,

21    390 F.3d 1101, 1103 (9th Cir. 2004). As a result, Plaintiff's Motion for Appointed Counsel was

22    denied for failure to show "exceptional circumstances" warranting the appointment of counsel.

23    *See* Dkt. No. 9 at 3.

24

However, Plaintiff's case is an action alleging employment discrimination under Title VII. Dkt. No. 5 at 3 (Plaintiff); Dkt. No. 28 at 3 (Defendant). A different standard for evaluating the appointment of counsel applies in Title VII cases, under 42 U.S.C. § 2000e-5. This provision states, in relevant part: "Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant" in a Title VII case. 42 U.S.C. § 2000e-5(f)(1). "Three factors are relevant to the trial court's determination of whether to appoint counsel [in a Title VII case]: (1) the plaintiff's financial resources; (2) the efforts made by the plaintiff to secure counsel on his or her own; and (3) the merit of the plaintiff's claim." *Johnson v. U.S. Dep't of Treasury*, 939 F.2d 820, 824 (9th Cir. 1991).[5]

Notably, 42 U.S.C. § 2000e-5 does not require "extraordinary circumstances" to appoint counsel. In holding that a denial of appointment of counsel under 42 U.S.C. § 2000e-5 is immediately appealable, the Ninth Circuit emphasized that:

> 'The decision to deny the assistance of an appointed attorney to a layman unschooled in the law in an area as complicated as the civil rights field is truly too important to be deferred until a resolution on the merits can be had. Such an individual likely has little hope of successfully prosecuting his case to a final resolution on the merits.'
>
> . . .
>
> Civil rights litigants are presumptively incapable of handling complex litigation themselves and of protecting themselves against the serious prejudice that occurs at trials in which their adversaries are represented by the most sophisticated law firms. There is no need in Title VII cases to evaluate the particular facts of the individual case . . . in order to determine that an unrepresented plaintiff's rights are seriously jeopardized by such a trial. Denial of

---

[5] *Johnson* also instructs that "the district court should determine if counsel would aid its resolution before disposing of the case on its merits." *Id.* at 825. While this analysis is not necessary here, as the Court is not disposing the case (on its merits or otherwise) at this juncture, the Court believes that counsel would assist the efficient and orderly resolution of this case. The Complaint, with its exhibits, is difficult to parse but is not clearly frivolous, and both Parties have engaged in procedural errors that have caused significant delays and difficulties in resolving this action.

counsel to civil rights litigants who are entitled to representation
under the statute is inherently prejudicial.

*Bradshaw v. Zoological Soc'y of San Diego*, 662 F.2d 1301, 1306, 1313 (9th Cir. 1981) (footnote omitted) (quoting *Caston v. Sears, Roebuck & Co.*, 556 F.2d 1305, 1308 (5th Cir. 1977)). The Ninth Circuit also noted Congress's intent, in enacting 42 U.S.C. § 2000e-5, to even the playing field for parties in Title VII cases, which often involve a complainant of a disadvantaged class and an employer with better resources and representation. *See id.* at 1317.

First, the Court examines Plaintiff's financial resources. *Johnson*, 939 F.2d at 824. Plaintiff proceeds *in forma pauperis* (Dkt. No. 4) and represents that he cannot pay legal fees and has no employment, at least as of November 2020 (Dkt. No. 6 at 2). This is sufficient for the Court to find that the first factor weighs in favor of granting Plaintiff's request for counsel, *see, e.g.*, *Franklin v. McDonough*, No. 21-cv-06328, 2022 WL 901544, at *2 (N.D. Cal. Mar. 28, 2022), though Plaintiff does not provide any updated information, in his Motion for Reconsideration or otherwise. *See* Dkt. No. 23 at 1.

The second factor is efforts made by Plaintiff to secure counsel on his own. *Johnson*, 939 F.2d at 824. In his original Motion for Appointed Counsel, Plaintiff notes that he contacted 16 attorneys and that they all declined to represent him over Plaintiff's inability to pay the fees and his unemployed status. Dkt. No. 6 at 2. He does not provide any details about whether any payment plans were discussed, when these consultations took place, or whether the possibility of *pro bono* or nonprofit legal representation was discussed or considered. But even without those details, 16 is a significant number of attorneys to consult, and it demonstrates the significant difficulty that Plaintiff has had in trying to retain counsel. The Court finds the second factor weighs in favor of granting Plaintiff's request.

The Court lacks sufficient information to weigh the third factor—the merits of Plaintiff's case. *Johnson*, 939 F.2d at 824. In evaluating this factor, courts generally look to the EEOC's investigation and determination, if any, in the case. *See, e.g.*, *Bradshaw*, 662 F.2d at 1319–20 (finding third factor satisfied because EEOC found reasonable cause to believe plaintiff was victim of discrimination). Here, the EEOC determined that it was "unable to conclude that the information obtained [regarding Plaintiff's allegations] establishes violations of the statutes." Dkt. No. 5-5 at 62. At the same time, upon perusing the Complaint, the Court finds that Plaintiff's case is not frivolous on its face.

This District has adopted a General Order providing for a plan to refer *pro se* litigants in civil rights actions to the Western District Pro Bono Panel for its evaluation and potential representation of the litigants. *See* General Order 16-20 (W.D. Wash. Dec. 8, 2020). Given the principles emphasized by the Ninth Circuit in considering the appointment of counsel in Title VII cases and the limited information available to the Court to evaluate Plaintiff's request for counsel, the Court finds it appropriate to refer Plaintiff's request for the appointment of counsel to the Screening Committee of the Western District Pro Bono Panel for its review and its recommendation as to whether counsel should be appointed. *See id.* § 3 (Appointment Procedure in Non-prisoner Civil Rights Cases). However, because Plaintiff used the incorrect form for his Motion for Appointed Counsel, Plaintiff is directed to submit a new application on the correct form. Plaintiff is also reminded that there is no guarantee that an attorney or law firm will volunteer to work on this case.

Accordingly, the Court DIRECTS Plaintiff to submit a new request for the appointment of counsel using the correct form, which is linked below and will be provided by the Clerk. Upon receipt of a correctly filled-out form, the Court will forward Plaintiff's request for the appointment of counsel and related filings to the Screening Committee of the Pro Bono Panel for

its determination. The Court STAYS the Motion for Reconsideration pending the receipt of the Screening Committee's recommendation. The Court will also STAY this action pending the resolution of the Motion for Reconsideration.

### III.   CONCLUSION

For the reasons stated above, it is hereby ORDERED as follows:

(1)   Defendant's Motion to Dismiss (Dkt. No. 17) is GRANTED in part and DENIED in part. Plaintiff has completed service of process, and Plaintiff's claim for punitive damages is dismissed.

(2)   Plaintiff's Motion for Summary Judgment (Dkt. No. 19) is STRICKEN.

(3)   Defendant's arguments for dismissal in its reply brief for its Motion to Dismiss (Dkt. No. 20) and its opposition brief to Plaintiff's Motion for Summary Judgment (Dkt. No. 21), to the extent not previously raised in the Motion to Dismiss, are STRICKEN.

(4)   Plaintiff is DIRECTED to submit a corrected request for the appointment of counsel within **fourteen (14) days** of this Order, or **October 14, 2022**. Plaintiff shall use the form available here:

https://www.wawd.uscourts.gov/sites/wawd/files/ApplforCourtAppCounsel-EmplDiscrim.pdf.

(5)   The Clerk of the Court is DIRECTED to mail a copy of this Order and the form found at the link provided above to Plaintiff.

(6)   Plaintiff's Motion for Reconsideration (Dkt. No. 23) is STAYED pending the receipt of Plaintiff's corrected request for the appointment of counsel and subsequent consideration by the Screening Committee.

(7)     This matter is STAYED until the earlier of this Court's decision on the Motion for Reconsideration.

(8)     The Parties are also cautioned that they are expected to know and abide by all procedural rules that apply here, including the Federal Rules of Civil Procedure, the Local Civil Rules, and the Court's own Chambers Procedures (https://www.wawd.uscourts.gov/judges/lin-procedures), and that failure to abide by such requirements may result in sanctions.

Dated this 30th day of September 2022.

Tana Lin
United States District Judge