UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES ENCINAS,<br><br>                Plaintiff,<br>    v.<br><br>UNIVERSITY OF WASHINGTON et al,<br><br>                Defendants. | CASE NO. 2:20-cv-01679-TL<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR PROTECTIVE ORDER |

This is an action for employment discrimination, retaliation, and wrongful termination. Dkt. No. 46 at 1 (amended complaint). This matter is before the Court on Defendant the University of Washington's ("UW") motion for a protective order (the "Motion"). Dkt. No. 59. Having considered the relevant record, the Court GRANTS the Motion.

### I.  BACKGROUND

Plaintiff James Encinas brings claims of discrimination, retaliation, and wrongful termination against his former employer, Harborview Medical Center ("Harborview"), and its parent organization, UW. Dkt. No. 46 at 1–2. Plaintiff was previously employed as a Peer

1. Support Specialist for Harborview's Outpatient Behavior Health Services Department (the
2. "Department"). *Id.* at 2. Plaintiff alleges that he suffered from "systemic racism" prevalent in the
3. Department during his employment, which in part included various race-based comments and
4. threatening behavior from supervisors and other peers in the Department. *Id.* at 4–6. Plaintiff
5. also alleges that he experienced unlawful retaliation, including termination from his
6. employment, as a result of his complaints regarding such behavior. *Id.* at 8–9. Plaintiff brings
7. claims under federal and state law for lost wages, consequential damages, emotional harm, and
8. fees and costs. *Id.* at 9–12.
9. The Parties are engaged in discovery, and Plaintiff has served UW with intent to depose
10. Ana Mari Cauce, the President of UW, on September 21, 2023. Dkt. No. 60-2 at 1. UW seeks a
11. protective order barring Plaintiff from deposing President Cauce. Dkt. No. 59 at 1 (motion); Dkt.
12. No. 65 (reply). Plaintiff opposes. Dkt. No. 61.

## II. DISCUSSION

14. UW argues that a deposition of President Cauce is inappropriate, as she has no personal
15. involvement with the alleged discriminatory conduct and facts of the case, noting that she is not
16. named as a witness with relevant knowledge in any Party's initial disclosures. Dkt. No. 59 at 2.
17. UW points to the "apex deposition" doctrine, which limits depositions of high-level executives
18. for fear of such depositions being used for abuse or harassment tactics. *See, e.g.*, *Rookaird v.*
19. *BNSF Railway Co.*, No. C14-176, 2015 WL 11233096, at *1 (W.D. Wash. July 8, 2015).
20. In opposition, Plaintiff argues that President Cauce has personal knowledge of some of
21. the allegations in this matter and may therefore be deposed. Dkt. No. 61 at 8–9. He cites
22. President Cauce's public statements regarding UW's anti-racism stance and Plaintiff's
23. November 29, 2019, email to President Cauce, and numerous other UW personnel, objecting to
24. the treatment he allegedly received during his employment at UW. *Id.* at 4–6. Another UW

employee, Damaris Warfield,[1] also sent an email on November 27, 2019, on behalf of Plaintiff and other individuals complaining of similar misconduct. *Id.* at 6; Dkt. No. 62 at 5. She addressed the email to Paul Hayes (identified as the Executive Director of an unspecified organization in his email signature) and President Cauce, copying a number of other UW personnel as well. No. 62 at 5. Plaintiff's email received a response from Mindy Kornberg (identified as Vice President for Human Resources at UW in her email signature). *Id.* at 8–9, 14. Ms. Warfield's email received responses from Mr. Hayes and Jennifer Petritz (identified as Employee Relations Director at UW Medicine and a member of Human Resources at Harborview in her email signature). *Id.* at 6, 11. President Cauce does not appear to have responded to either email.

Plaintiff also argues that the Motion is premature, as four depositions of UW employees (three of whom were Plaintiff's supervisors) are noted before President Cauce's deposition, rendering it too early to determine whether President Cauce's deposition is necessary and permissible for this case. Dkt. No. 61 at 9. Plaintiff asks that the Court therefore reserve its ruling on the Motion. *Id.* at 11.

Federal Rule of Civil Procedure ("FRCP") 30(a)(1) permits a party to depose "any person, including a party, without leave of court . . . ." A court may, however, limit discovery as needed, including by issuing a protective order to prevent "annoyance, embarrassment, oppression, or undue burden or expense . . . ." *See* Fed. R. Civ. P. 26(b)(2)(C), 26(c)(1). Ordinarily, "[a] strong showing is required before a party will be denied entirely the right to take a deposition." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

---

[1] Plaintiff identifies this individual as "Damaris Ruiz." Dkt. No. 61 at 6.

ORDER GRANTING
DEFENDANT'S MOTION FOR
PROTECTIVE ORDER - 3

Courts have recognized, however, a particular danger for abuse or harassment in requests to depose high-level executives or officials, or "apex" depositions, and a court's discretion to limit such discovery. *See, e.g.*, *Rookaird*, 2015 WL 11233096, at *1; *Robinett v. Opus Bank*, No. C12-1755, 2013 WL 5850873, at *5 (W.D. Wash. Oct. 30, 2013) ("[V]irtually every court that has addressed deposition notices directed at an official at the highest level or apex[ ] of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment." (quoting *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. 05-4374, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007))). *Cf. In re U.S. Dep't of Educ.*, 25 F.4th 692, 703–04 (9th Cir. 2022) (finding error in permitting deposition of former U.S. Secretary of Education because deposition was unnecessary and it risked "distracting cabinet secretaries from their essential duties with an inundation of compulsory, unnecessary depositions"). "In determining whether to permit an 'apex deposition,' courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Rookaird*, 2015 WL 11233096, at *1; *accord Robinett*, 2013 WL 5850873, at *5 (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)).

Having reviewed the relevant record, the Court agrees with Defendant that a deposition of President Cauce is not appropriate at this time.

First, there is nothing in the record to indicate President Cauce's involvement, much less "unique first-hand, non-repetitive knowledge," *see Rookaird*, 2015 WL 11233096, at *1, in the factual allegations contained in the Amended Complaint. At most, Plaintiff sent a group email to President Cauce and other UW-affiliated individuals (as did another UW employee), making allegations of misconduct by UW staff; President Cauce did not reply. *See* Dkt. No. 62 at 4–14 (exhibits showing relevant emails). There is no *unique* knowledge that President Cauce might

have about Plaintiff's allegations, and certainly no *non-repetitive* knowledge that cannot be obtained from other individuals at UW. President Cauce also can hardly be said to have *first-hand* knowledge, given that all her knowledge about the facts at issue presumably are from Plaintiff's (and other employee's) email to President Cauce, not any action she has purportedly taken herself.

President Cauce's broad statements regarding UW's commitment to combating racism also do not show any particular knowledge relevant to this case. None of her statements relate to policies at Harborview, much less allegations of discriminatory conduct at Harborview.[2] Notably, lawsuits against UW abound in this District, as can be seen from a simple ECF search. *Cf. In re U.S. Dep't of Educ.*, 25 F.4th at 703 & n.3 (noting "sheer number of lawsuits filed against, for example, the Attorney General or the Secretary of Health and Human Services"). Plaintiff provides no persuasive reason why President Cauce is more personally involved in his case than any other case naming UW as a party.

Second, Plaintiff's insistence that a protective order is not appropriate because he *will* have taken depositions of other lower-level personnel at UW who are closer to the facts of the case before President Cauce's deposition is unpersuasive. In *Celerity, Inc. v. Ultra Clean Holding, Inc.*, the court granted a protective order to bar a premature deposition of a plaintiff company's top executives and noted that:

> [Defendant] seems to believe that[,] as long as it schedules the depositions of [the two executives] after the depositions of the lower level employees, that it has met its burden to justify these apex depositions according to the case law. This is not the law. Nor would it be proper for [defendant] to take half-hearted depositions of lower-level employees in order to set up an opportunity to

---

[2] Indeed, Plaintiff's selected excerpts of President Cauce's public statements appear to largely focus on the student body, given its references to the "campus," "students, faculty and staff," and "faculty." Dkt. No. 61 at 4–5. At most, it appears these statements were blanket statements covering UW and all the various departments, programs, and colleges under its umbrella.

ORDER GRANTING
DEFENDANT'S MOTION FOR
PROTECTIVE ORDER - 5

> depose [the two executives]. It must make a good faith effort to extract the information it seeks from interrogatories and depositions of lower-level [plaintiff company] employees.

2007 WL 205067, at *5. The Court agrees with this reasoning. Plaintiff chose to notice President Cauce's deposition *before* actually deposing other individuals and obtaining relevant discovery, despite the discovery completion deadline being well over six months away. *See* Dkt. No. 66 (amended trial scheduling order). *Cf. Ahlman v. Barnes*, No. C20-835, 2021 WL 1570838, at *7 (C.D. Cal. Mar. 9, 2021) (granting apex deposition where plaintiffs demonstrated failure to gather the relevant information from less intrusive methods after numerous depositions). Having done so, Plaintiff cannot rely on the speculation that he *might* be able to justify President Cauce's deposition after the other depositions are completed. Further, as Defendant points out, Plaintiff chose to note the deposition for September 21, leaving Defendant with relatively limited time to seek the Court's intervention in line with the local rules—therefore, the Court rejects Plaintiff's argument that Defendant's motion is premature.

Finally, there is ample reason for the Court to suspect that Plaintiff's notice of deposition on President Cauce is intended to harass, embarrass, or otherwise cause Defendant undue burden and expense. *See* Fed. R. Civ. P. 26(c)(1). In addition to Plaintiff's failure to provide any persuasive reason for why President Cauce's deposition is necessary—or indeed, relevant—to his case, Plaintiff's failure to cite any link between President Cauce at Harborview is suspect. Plaintiff also did not note the depositions of any individual who actually responded to the two group emails addressed to President Cauce, suggesting Plaintiff cannot make a good faith effort to understand President Cauce's actual involvement in the email correspondence at issue before her deposition. The Court also takes note of the noting date for President Cauce's deposition,

which was issued before any deposition had taken place or any interrogatories had been issued[3] and is only nine days after the first noted deposition, out of five total depositions. Dkt. No. 60-2 (amended notice of deposition); Dkt. No. 65 at 6 (list of other depositions). These details, among others, suggest that Plaintiff's primary intent behind seeking the deposition of President Cauce is not the orderly and proper discovery of information to prove his case and that a protective order is appropriate.

For the reasons above, the Court finds good cause to prohibit Plaintiff from deposing President Cauce at this time. If Plaintiff discovers information later that strongly suggests that a deposition of President Cauce is highly relevant and appropriate under the "apex" doctrine, Plaintiff may move to compel the deposition, unless the Parties submit a stipulation permitting the deposition to proceed. The Parties are cautioned that, pursuant to FRCP 37(a)(5), the Court may direct a party to pay the opposing party's fees and costs upon the grant, denial, or partial grant/denial of a motion to compel discovery.

### III.   CONCLUSION

Accordingly, Defendant's Motion (Dkt. No. 65) is GRANTED. Plaintiff's notice to depose President Cauce is QUASHED. Plaintiff may not take the deposition of President Cauce. Plaintiff may move to compel the deposition of President Cauce at a later date after further discovery, if warranted.

Dated this 18th day of September 2023.

Tana Lin
United States District Judge

---

[3] Plaintiff represents, in his opposition brief, that he has now issued 29 requests for production of documents and has received over 1,000 pages of discovery. Dkt. No. 61 at 10.